MICHAEL J. DUVALL (Bar No. 276994)
michael.duvall@dentons.com
POOJA L. SHAH (Bar No. 330550)
pooja.l.shah@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924

GRANT J. ANKROM (*pro hac vice*)
Grant.ankrom@dentons.com
MICHAEL E. HARRISS (*pro hac vice*)
michael.harriss@dentons.com
DENTONS US LLP
211 N. Broadway, Suite 3000
St. Louis, MO 63102-2741
Tel: (314) 241-1800
Fax: (314) 259-5959

SARAH E. TREVINO (*pro hac vice*)
sarah.trevino@dentons.com
DENTONS US LLP
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308
Tel: (404) 527-4000
Fax: (404) 527-4198

Attorneys for Defendant
TARGET CORPORATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEXANDER PANELLI, individually, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 3:24-cv-02748-SK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A), TO DISMISS PURSUANT TO RULES 12(B)(6) AND 9(B), AND TO STRIKE PURSUANT TO RULE 12(F)**<br><br>Date: August 19, 2024<br>Time: 9:30 a.m.<br>Crtrm.: C<br>Judge: Magistrate Judge Sallie Kim |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 19, 2024 at 9:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom C – 15th Floor of the San Francisco Courthouse of this Court, located at 450 Golden Gate Ave., San Francisco, California 94102, before the Honorable Sallie Kim, Defendant Target Corporation will, and hereby does, move the Court for an order transferring this case to the District of Minnesota or the Southern District of California, dismissing with prejudice the Amended Class Action complaint (ECF 18) and each claim pleaded therein by Plaintiff Alexander Panelli, and striking Plaintiff's class allegations. This motion is made pursuant to 28 U.S.C. § 1404(a) and Rules 12(b)(6), 9(b), and 12(f) of the Federal Rules of Civil Procedure, and based on the following grounds:

1. The case should be transferred to the District of Minnesota or the Southern District of California because it could not have been filed originally in this District, as Target is a resident of Minnesota, Plaintiff is a resident of San Diego, California, and Plaintiff purchased the sheet set that is the basis for his claims in San Diego, California, and the interests of justice and convenience of the parties and witnesses weigh in favor of transfer.

2. Plaintiff fails to state a claim because he does not allege sufficient facts to support his claim that the sheets he purchased do not, in fact, have a thread count of 800, as labeled.

3. Plaintiff cannot challenge products that he did not purchase.

4. The Court lacks equitable jurisdiction over Plaintiff's UCL claim and the equitable portions of Plaintiff's CLRA claim.

5. Plaintiff cannot seek punitive damages because punitive damages generally are not available under the UCL, and Plaintiff does not allege facts to support a request for punitive damages.

6. Plaintiff's class allegations should be stricken because they fail to exclude putative class members who are subject to an arbitration agreement and class action waiver and who have agreed to litigate any non-arbitrable claims in Minnesota.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declarations of Michael J. Duvall, Carolina Padilla, and Elizabeth Greywitt, and all pleadings

and papers on file or to be filed in this action, on the arguments of counsel, and on any other matters that may properly come before the Court for its consideration.

Dated: June 24, 2024

DENTONS US LLP

By: */s/ Michael J. Duvall*
Michael J. Duvall

Attorneys for Defendant
TARGET CORPORATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## TABLE OF CONTENTS

I. INTRODUCTION ........ 9

II. PLAINTIFF'S ALLEGATIONS ........ 10

III. ARGUMENT ........ 12

A. This Case Should Be Transferred to the District of Minnesota or the Southern District of California. ........ 12

B. Plaintiff's Claims Should Be Dismissed Under Rule 12(b)(6). ........ 16

1. Plaintiff Does Not Allege Facts to Support His Claim that the Product He Purchased Does Not Have an 800 Thread Count as Labeled. ........ 17

2. Plaintiff Cannot Challenge Products That He Did Not Purchase. ........ 21

3. The Court Lacks Equitable Jurisdiction over Plaintiff's UCL Claim and the Equitable Portions of Plaintiff's CLRA Claim. ........ 23

4. Plaintiff's Request for Punitive Damages Is Improper. ........ 25

C. Plaintiff's Class Allegations Should Be Stricken Because They Fail to Exclude Putative Class Members Subject to an Arbitration Agreement and Class Action Waiver and Who Agreed to Litigate in Minnesota. ........ 26

IV. CONCLUSION ........ 31

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ang v. Bimbo Bakeries USA, Inc.*,
No. 4:13-cv-1196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) .......... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 16

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) .......... 16, 17, 19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 16

*Bhatia v. Silvergate Bank*,
No. 3:23-cv-667-JSC, 2023 WL 4937325 (N.D. Cal. Aug. 1, 2023) .......... 14

*Bultemeyer v. CenturyLink Inc.*,
No. 2:14-cv-2530, 2022 WL 1046292 (D. Ariz. Apr. 7, 2022) .......... 30

*Cabrera v. Ford Motor Co.*,
No. 5:23-cv-1402-BLF, 2023 WL 6307946 (N.D. Cal. Sept. 26, 2023) .......... 12, 13, 14, 15

*Conde v. Open Door Mktg.*,
223 F. Supp. 3d 949 (N.D. Cal. 2017) .......... 31

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .......... 17

*Cornejo v. Big Lots Stores*,
No. 2:22-cv-1247, 2023 WL 3737058 (E.D. Cal. May 31, 2023) .......... 30

*Cover v. Windsor Surry Co.*,
No. 14-cv-5262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) .......... 18

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015) .......... 27

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .......... 30

*Dougherty v. Source Nats., Inc.*,
148 F. Supp. 3d 831 (E.D. Mo. 2015) .......... 19

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300


*Dugan v. Lloyds TSB Bank, PLC*,
No. 3:12-cv-2549-WHA, 2013 WL 1703375 (N.D. Cal. Apr. 19, 2013) ............................... 31

*Earth Island Inst. v. Quinn*,
56 F. Supp. 3d 1110 (N.D. Cal. 2014) ........................................................................ 13

*Easton v. Wells Fargo & Co.*,
No. 4:20-cv-2193-HSG, 2020 WL 3639934 (N.D. Cal. July 6, 2020) ................................. 14

*Effinger v. Ancient Organics LLC*,
657 F. Supp. 3d 1290 (N.D. Cal. 2023) ................................................................ 21, 22

*Forouzesh v. CVS Pharmacy*,
No. 2:18-cv-4090, 2019 WL 652887 (C.D. Cal. Feb. 15, 2019) ........................................ 19

*Guzman v. Polaris Indus.*,
49 F.4th 1308 (9th Cir. 2022)............................................................................ 23, 24, 25

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409 (9th Cir. 1985)............................................................................................ 12

*Italian Colors Rest. v. Am. Express Co.*,
No. 3:03-cv-3719, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ..................................... 16

*Jones v. GNC Franchising*,
211 F.3d 495 (9th Cir. 2000)............................................................................................ 12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)...................................................................................... 17, 20

*Lee v. Ticketmaster LLC*,
817 F. App'x 393 (9th Cir. 2020)...................................................................................... 30

*Lopez v. Zarbee's, Inc.*,
No. 3:22-cv-4465-CRB, 2023 WL 210878 (N.D. Cal. Jan. 17, 2023).................................. 22

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987)............................................................................................ 14

*In re MacBook Keyboard Litig.*,
No. 5:18-cv-2813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................................ 25

*Maybaum v. Target Corp.*,
No. 2:22-cv-687-MCS-JEM, 2022 WL 1321246 (C.D. Cal. May 3, 2022) .......................... 30

*McKinney v. Corsair Gaming, Inc.*,
No. 3:22-cv-312-CRB, 2022 WL 2820097 (N.D. Cal. July 19, 2022) ........................... 21, 22

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020)...................................................................................... 17, 21

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Morvant v. P.F. Chang's China Bistro*,
870 F. Supp. 2d 831 (N.D. Cal. 2012) .......... 27

*Nacarino v. KSF Acquisition Corp.*,
No. 3:22-cv-4021-MMC, 2022 WL 17178688 (N.D. Cal. Nov. 23, 2022) .......... 25

*Nat'l Convention Servs. v. Applied Underwriters Captive Risk Assurance Co.*,
No. 1:15-cv-7063, 2019 WL 3409882 (S.D.N.Y. July 27, 2019) .......... 31

*Nat'l Urb. League v. Ross*,
508 F. Supp. 3d 663 (N.D. Cal. 2020) .......... 18

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 20

*O'Connor v. Uber Techs.*,
904 F.3d 1087 (9th Cir. 2018) .......... 30

*Oberstein v. Live Nation Ent.*,
60 F.4th 505 (9th Cir. 2023) .......... 29

*In re: Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
953 F. Supp. 2d 713 (N.D. Tex. 2013) .......... 26, 27

*Park v. Dole Fresh Vegetables, Inc.*,
964 F. Supp. 2d 1088 (N.D. Cal. 2013) .......... 15

*Regan v. Pinger, Inc.*,
No. 5:20-cv-2221-LHK, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021) .......... 30

*Rice-Sherman v. Big Heart Pet Brands*,
No. 3:19-cv-3613-WHO, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) .......... 25

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 26

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) .......... 17

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) .......... 23, 24, 25

*Sidhu v. Bayer Healthcare Pharms.*,
No. 5:22-cv-1603-BLF, 2023 WL 6541865 (N.D. Cal. Oct. 5, 2023) .......... 23, 25

*Sims v. Opportunity Fin.*,
No. 4:20-cv-4730-PJH, 2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) .......... 20

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.*,
88 F.3d 780 (9th Cir. 1996) .......... 16

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 18

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 16

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......... 26

*Valencia v. E*Trade Secs.*
No. 3:21-cv-161-SK, 2021 WL 2587965 (N.D. Cal. Mar. 4, 2021) .......... 14, 15

*Vasquez v. Wells Fargo Bank*,
77 F. Supp. 3d 911 (N.D. Cal. 2015) .......... 13

*Williams v. Bowman*,
157 F. Supp. 2d 1103 (N.D. Cal. 2001) .......... 14

*Wilson v. Conair Corp.*,
No. 1:14-cv-894, 2014 WL 4249514 (E.D. Cal. Aug. 27, 2014) .......... 13

**Statutes**

28 United States Code
§ 1391(b) .......... 12, 13
§ 1404(a) .......... 9. 12, 31
§ 1441(a) .......... 12
§ 1446(a) .......... 9

**Other Authorities**

Federal Rules of Civil Procedure
Rule 8(a) .......... 20
Rule 9(b) .......... 17, 20
Rule 12(b)(6) .......... 9, 16, 23, 31
Rule 12(f) .......... 10, 31

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

San Diego resident and Plaintiff Alexander Panelli filed this action against Target in San Francisco County Superior Court even though he lives in San Diego, purchased the sheet set at issue at a Target store in San Diego, and is represented by counsel from San Diego. He sued a defendant, Target, that is headquartered in Minnesota, and he seeks to represent a class including purchasers who agreed to either individually arbitrate their disputes with Target or litigate them in Minnesota. Target removed the case to this District, the Northern District of California, as it was required to do under 28 U.S.C. § 1446(a) (requiring removal to the Federal District encompassing the State County in which the action was filed), and at that time did not know that Plaintiff's purchase actually had not occurred in this District. In fact, Plaintiff only revealed the location of his purchase in his First Amended Complaint (FAC), which he filed after Target's removal. The FAC demonstrates that none of the relevant events actually occurred in this District. Given the interests of justice, the convenience of the parties and witnesses, and consistent with prior decisions of this Court, this case should be transferred to either the District of Minnesota or the Southern District of California pursuant to 28 U.S.C. § 1404(a).

The Court should also dismiss the FAC pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff claims that all 100% cotton sheets that are sold at Target and advertised as having a thread count of 600 or higher are mislabeled and misleading because, according to Plaintiff, they necessarily have a lower-than-advertised thread count. But the FAC contains only two paragraphs that purport to support Plaintiff's claim, neither of which contains a sufficient factual basis to support Plaintiff's contention. Although Plaintiff refers to "independent testing," his single-paragraph alleging testing is insufficiently—and seemingly intentionally—vague, as it does not include facts sufficient to assess the basis or plausibility of the test results. This is particularly notable considering Defendant's pre-motion meet-and-confer request that Plaintiff attach a copy of his alleged "testing" to his Amended Complaint (including because the allegation is contradictory to Defendant's multiple, contemporaneous testing records). Moreover, it appears from Plaintiff's single-paragraph testing allegation that his alleged testing did not even use the current testing

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

standard that *Plaintiff* maintains is required. Aside from this single threadbare allegation of purported testing, Plaintiff simply alleges "on information and belief" that a thread count of 600 is *physically impossible* for 100% cotton fabric. Notably, however, Plaintiff does not identify the "information" or *factual basis* on which this *belief* is based. Such wholly unsupported speculation, which is contradicted by actual facts, is insufficient to state a claim.

Setting aside the fact that Plaintiff has no factual basis for his claims, Plaintiff also cannot challenge such a broad range of unpurchased products (*i.e.*, every 100% cotton sheet set sold at Target and labeled as 600 thread count or higher) without providing specific details about those other products. Beyond the 800-thread count, 100% cotton Threshold Signature sheet set that he purchased, Plaintiff has not identified with specificity which other products he is actually challenging, let alone alleged facts demonstrating that such products are sufficiently similar to the product that he purchased so as to allow him to pursue claims related to such products on behalf of absent class members. This warrants dismissal of any claims based on unpurchased products.

Equitable jurisdiction also is lacking in this case. Plaintiff plainly seeks monetary damages, which constitutes an adequate remedy at law and precludes the need for equitable relief under the UCL or CLRA. Additionally, the FAC fails to plausibly allege a threat of future harm, which is a necessary condition for equitable claims. Nor could such an allegation be added to a further amended complaint, as an allegation of future harm would be contradicted by Plaintiff's apparent belief that a 100% cotton sheet can *never* be accurately labeled as having a thread count of 600 or higher. Plaintiff's request for punitive damages is similarly deficient, as it does not allege "oppression, fraud, or malice" by an officer, director, or managing agent of Target.

Finally, Plaintiff's putative class is patently overbroad because it does not exclude online purchases from Target's website, which are indisputably subject to an arbitration provision and class action waiver. Accordingly, Plaintiff's class allegations should be stricken under Rule 12(f).

## II. PLAINTIFF'S ALLEGATIONS

On September 12, 2023, Alexander Panelli, a San Diego resident, allegedly visited a San Diego Target store and purchased just one item (in cash): a "100% cotton sateen" set of queen-size, Threshold Signature sheets that were labeled as an "800 Thread Count Sheet Set." (ECF 18

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

¶¶ 4, 15; ECF 18-4). The front label of the packaging advertised that the "[s]mooth sateen weave offers softness, comfort and longevity" and that the sheet was "certified STANDARD 100 by OEKO-TEX." (ECF 18 ¶ 15). But, according to Plaintiff and after having conducted unspecified "extensive research," he would not have purchased the bedsheets "[b]ut for the 800 Thread Count, 100% cotton representation." (ECF 18 ¶ 17).

Plaintiff does not allege any qualitative dissatisfaction with the sheets, just that his (or his counsel's) "independent" testing purportedly "confirmed that the bedsheet set [that he] purchased [] did not have an 800 thread count but instead had a thread count of 168 x 120, or a total thread count of 288." (ECF 18 ¶ 18). The purported testing, however, is not attached to the FAC—despite Defendant's request that Plaintiff include it with the Amended Complaint. (*See* Decl. of Michael J. Duvall in Support of Def's Mot. to Transfer, to Dismiss, and to Strike ("Duvall Decl."), ¶¶ 2-4). Notably, Plaintiff also does not identify in the FAC the "independent" lab or alleged "expert" who performed the testing. Indeed, other than generically alleging that this unidentified "expert" is "knowledgeable in thread counting methodology" and followed the "standard method" of testing thread count—under a version of a standard that was issued more than 20 years ago and has been revised several times since—Plaintiff's FAC does not include any facts as to who performed the testing, how the testing was actually performed, or how the thread count was actually measured, calculated, or ultimately determined.

Plaintiff next alleges, based solely "[o]n information and belief," that "*any* marketing or advertising of 100% cotton bedsheets consisting of a thread count of 600 or higher is false and misleading" because, according to the FAC, "it is *physically impossible* for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." (ECF 18 ¶ 24 (emphases added)). The FAC does not, however, identify any factual support for this allegation or specify the "information" on which this belief is purportedly based. Nevertheless, the FAC relies on this allegation, coupled with the bald claim that "[t]he bed sheet set purchased by Plaintiff was substantially similar to all other 100% cotton sheets with an advertised thread count of 600 or higher sold by TARGET during the class period," to challenge all 100% cotton sheet sets sold by Target that were advertised and marketed as having a thread count of 600 or higher.

(ECF 18 ¶¶ 19, 24, 43).

With this theory of falsity and "deception," Plaintiff originally filed a Class Action Complaint in the Superior Court of California, County of San Francisco, more than 8 hours and 500 miles away from his attorney's office and his San Diego residence. (ECF 1-1). Target removed the action to this Court, (ECF 1), and Plaintiff then filed his Amended Class Action Complaint, adding for the first time allegations of his place of purchase, namely at a San Diego Target store. (ECF 18). Plaintiff claims that Target's actions violate California's consumer protection statutes, including the Unfair Competition Law (UCL) and the Consumers Legal Remedies Act (CLRA), purports to represent a class of purchasers of sheets sold by Target and labeled as having a thread count of 600 or higher, and generally seeks restitution, disgorgement, actual damages, punitive damages, attorney's fees and costs, and injunctive relief in the form of an order enjoining Target from engaging in the methods, acts, and practices alleged in the FAC.

## III. ARGUMENT

### A. This Case Should Be Transferred to the District of Minnesota or the Southern District of California.

A request for transfer under Section 1404(a) requires the Court to employ a two-step analysis. First, the Court must determine whether the case could have been brought in the requested venue. 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Second, the Court must assess whether the convenience of the parties and witnesses, and the interests of justice, support transfer. *Jones v. GNC Franchising*, 211 F.3d 495, 498-99 (9th Cir. 2000).

As an initial matter, this action currently is in this Court because, as a removed action, venue is governed by 28 U.S.C. § 1441(a), requiring removal to "the district and division embracing the place where such action is pending." It bears noting, however, that had Plaintiff originally filed this case in Federal court, it could *not* have been brought in *this* Court. *See* 28 U.S.C. § 1391(b) (requiring an action to be venued in the District in which the defendant resides or "which a substantial part of the events or omissions giving rise to the claim occurred"); *Cabrera v. Ford Motor Co.*, No. 5:23-cv-1402-BLF, 2023 WL 6307946, at *4-6 (N.D. Cal. Sept. 26, 2023) (finding that venue was not proper in this District because "all of the relevant events,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

including the sale of the Vehicle . . . occurred in the Southern District" and, despite the defendant having an office in this District, "Plaintiffs have failed to demonstrate how their suit is related to [defendant]'s activities in the Northern District"). By contrast, Plaintiff's case *could* have been brought in either Minnesota, which is the judicial district in which Defendant Target resides, or the Southern District of California, which is "the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2); *Cabrera*, 2023 WL 6307946, at *5 (concluding that a substantial part of the events giving rise to the claim concerning the sale of a product occurred in the District where the product was sold).

As alleged in the FAC, and confirmed by the Declaration accompanying this motion, Defendant Target is a resident of Minnesota. (ECF 18 ¶ 5; Decl. of Elizabeth Greywitt in Support of Def's Mot. to Transfer, to Dismiss, and to Strike ("Greywitt Decl.") ¶ 4). And as revealed in the FAC, the events giving rise to Plaintiff's claim occurred in the Southern District of California, where Plaintiff resides and purchased the product. (ECF 18 ¶ 4; ECF 18-4 (receipt confirming purchase at a San Diego Target store)); *see also Cabrera*, 2023 WL 6307946, at *5; *Wilson v. Conair Corp.*, No. 1:14-cv-894, 2014 WL 4249514, at *2 (E.D. Cal. Aug. 27, 2014) ("Courts routinely find venue proper in UCL and CLRA cases where the plaintiff encountered false advertising and purchased the product in question.").

Because this case could have been brought in either the District of Minnesota or the Southern District of California, the Court must next consider the convenience of the parties and witnesses, as well as the interests of justice. *See Vasquez v. Wells Fargo Bank*, 77 F. Supp. 3d 911, 924-25 (N.D. Cal. 2015) (following removal, transfer to the Central District of California was warranted for the convenience of the parties and witnesses and in the interests of justice). The Court may also consider factors such as the location where the relevant agreements were negotiated and executed, the plaintiff's choice of forum, the respective parties' contacts with the forum, the contacts relating to the plaintiff's cause of action in the chosen forum, the differences in the costs of litigation in the alternative forums, and the ease of access to sources of proof. *Id.* at 924. "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1117 (N.D.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Cal. 2014) (granting motion to transfer to the Eastern District of California).

In a putative class action suit such as this, the named plaintiff's choice of forum is given less weight than other factors—particularly considering the Plaintiff's lack of connection to this forum. *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (affirming transfer to the Southern District of New York because, as a class action where "the operative facts have not occurred within the forum," the plaintiff's "choice is entitled to only minimal consideration"); *Easton v. Wells Fargo & Co.*, No. 4:20-cv-2193-HSG, 2020 WL 3639934, at *3 (N.D. Cal. July 6, 2020) ("Although Plaintiff's choice of forum is generally entitled to some deference, the degree of deference is substantially diminished in several circumstances," including "where: (1) the named plaintiff represents a class, (2) the plaintiff resides outside of the chosen forum, and (3) the conduct giving rise to the claims occurred in a different forum") (cleaned up).

Here, other than apparent forum-shopping, it is unclear why Plaintiff filed this case in the Superior Court for the County of San Francisco, which is more than 500 miles away from San Diego where he and his attorneys are located and where he purchased the product at issue (Plaintiff offered no explanation for this in his Complaint). Where the "plaintiff is not a resident of this district and the events giving rise to the case did not occur here, plaintiff's choice of forum cannot be afforded substantial deference." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001) (granting motion to transfer); *Bhatia v. Silvergate Bank*, No. 3:23-cv-667-JSC, 2023 WL 4937325, at *7 (N.D. Cal. Aug. 1, 2023) (transferring to the Southern District of California because "Plaintiffs chose to sue in a forum where they do not reside" and "[t]he force of Plaintiffs' forum choice depends on the extent of their contacts with the forum, including those related to the cause of action"); *Cabrera*, 2023 WL 6307946, at *5 (transferring to the Southern District of California, where the challenged product was purchased, because "[i]f a plaintiff's chosen forum lacks a significant connection to the events that gave rise to the complaint, the deference given to the plaintiff is slight"); *Valencia v. E*Trade Secs.* No. 3:21-cv-161-SK, 2021 WL 2587965, at *2 (N.D. Cal. Mar. 4, 2021) (granting motion to transfer where neither party resided in the Northern District and "[n]o operative facts occurred in this District").

Turning to the convenience of parties and witnesses, which "is often the most important

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

factor in resolving a motion to transfer," and the interests of justice, multiple witnesses are located in the District of Minnesota or the Southern District of California. *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (transferring to the Central District of California because, among other things, "Plaintiff resides in the Central District, Plaintiff's counsel and Dole's counsel reside in the Central District," and multiple witnesses were outside the Northern District; thus, it would "be cheaper and more efficient" to litigate in the Central District). As it relates to the District of Minnesota, Target is a resident of that District, and decisions relating to product selection, marketing, and labeling of the products at issue were made in Minnesota. (Greywitt Decl. ¶¶ 4-5). Indeed, four of the eight Target employees who appear to have the most knowledge regarding the subject matter of the FAC are located in Minnesota. (*Id.* ¶ 6). The four others are remote employees who are located in Wisconsin, North Carolina, Texas, and Florida, respectively, and who report to Target's headquarters in Minnesota. (*Id.*).

As to the Southern District of California, Plaintiff purchased the product that he challenges at a Target store in that District—*i.e.*, his purported claims arose there. And, of course, Plaintiff, a witness himself, is located in the Southern District of California, as is his counsel, which weighs in favor of transfer to the Southern District. (ECF 18 ¶ 4); *see also Cabrera*, 2023 WL 6307946, at *6 (transferring action to the Southern District, in part, because the plaintiff was located in the Southern District and "[c]ounsel for both parties are located closer to the Southern District than the Northern District"). By contrast, no witnesses that are material or even relevant to Plaintiff's claim are located in this District.

Further supporting transfer, both the District of Minnesota and the Southern District of California are less congested than this District. As of 2023, the Northern District had 436 more filings and 9,168 more pending cases than the Southern District, and 2,839 more filings and 5,181 more pending cases than the District of Minnesota. *See* https://www.uscourts.gov/sites/default/files/fcms_na_distcomparison1231.2023.pdf, last accessed June 22, 2024; *Valencia*, 2021 WL 2587965, at *3 (granting motion to transfer in part due to the relative congestion of the venues). Similarly, there are only 192 civil cases assigned per Judge in the Southern District, compared to 466 per judge in this District. *See*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf, last accessed June 22, 2024.

Transfer to the District of Minnesota is further supported by the fact that online purchasers purportedly encompassed in Plaintiff's class—to the extent they are not excluded from this case altogether because they agreed to individual arbitration (*see* Sec. III.C, *infra*)—agreed to litigate any non-arbitrable claims in Minnesota and that Minnesota choice-of-law rules would apply to their claims. (*See* Greywitt Decl. ¶¶ 7-8, 10, Exs. 1-2); *Italian Colors Rest. v. Am. Express Co.*, No. 3:03-cv-3719, 2003 WL 22682482, at *6 (N.D. Cal. Nov. 10, 2003) (finding forum-selection clause weighed in favor of transfer where part of the putative class, not including the named plaintiff, was subject to the clause).

In sum, the most material factors, the convenience of parties and witnesses, and the interests of justice weigh in favor transfer, and this case should be transferred to either the District of Minnesota or the Southern District of California.

**B. Plaintiff's Claims Should Be Dismissed Under Rule 12(b)(6).**

A court may dismiss a complaint under Rule 12(b)(6) for either lacking a cognizable legal theory or for failing to allege sufficient facts to support a cognizable legal claim. *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In conducting this analysis, a court is not to assume "the [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "The court [also] need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* Ultimately, factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Where, as here, a CLRA or UCL claim is "grounded in fraud," the claim also must be

pleaded with particularity under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). That is, Plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), so as to provide Target with sufficient "notice of the particular misconduct that is alleged to constitute the fraud" to allow it to "defend against the charge and not just deny that [it has] done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (UCL and CLRA claims must allege "the basic premise of what is false or misleading about a statement, and why it is false"). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

#### 1. Plaintiff Does Not Allege Facts to Support His Claim that the Product He Purchased Does Not Have an 800 Thread Count as Labeled.

The Court may not assume that "the [plaintiff] can prove facts that [he] has not alleged." *Council of Carpenters,* 459 U.S. at 526. Critically here, the FAC contains only two allegations, Paragraphs 18 and 24, that purport to support Plaintiff's claim that the product that he purchased did not meet the specifications of having an 800 thread count. But neither paragraph provides a sufficient *factual basis* to support Plaintiff's contentions.

Paragraph 18 generally refers to "independent testing," but the allegation is insufficiently vague, contradictory, and fails to include facts sufficient to assess the basis for Plaintiff's claim. Paragraph 24 alleges "on information and belief" that a 600 thread count is *physically impossible* for cotton fabric, but such speculation is wholly unsupported and insufficient to state a claim. Each of these allegations is discussed in turn.

***"Independent Testing."*** Paragraph 18 of the FAC maintains that a specific methodology typically is used for testing thread count—namely, ASTM 3775. But Paragraph 18 (and the FAC overall) lacks any *facts* showing that Plaintiff actually tested the product in conformity with the current ASTM 3775 standard and/or explaining how the testing arrived at a purported thread count of 288. Notably, the FAC does not identify the laboratory that conducted the testing or facts supporting its qualifications to conduct this type of testing. Instead, the FAC only vaguely alleges that testing was performed by "an expert who is knowledgeable in thread counting

methodology"—whatever that means. (ECF 18 ¶ 18). That is not the same thing as alleging that an expert or a laboratory was *qualified* to conduct thread count testing.

Indeed, according to the FAC, the purportedly knowledgeable "expert" apparently used a version of the ASTM 3775 standard that is more than 20 years old—and has been updated numerous times since then. (ECF 18 ¶ 18; *see also* Duvall Decl. ¶ 6, Ex. 3).[1] Specifically, the FAC alleges that the unidentified "expert's" testing followed the ASTM D3775 ± 03a standard—a version that was published in 2003. (ECF 18-3 at 2 n.1). Moreover, the "Method C: traversing thread counter" allegedly used by Plaintiff's "expert" does not come from an ASTM 3775 standard at all, but instead from an entirely different ISO 7211 standard (which itself is under review and expected to be replaced). (ECF 18 ¶ 18; *see* Duvall Decl. ¶ 7, Ex. 4). These inconsistencies within Plaintiff's own FAC about his testing methods renders his testing allegations implausible as a whole. *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (finding plaintiff's theory implausible due to contradictory facts in the complaint).

Even setting aside these inconsistencies, Plaintiff has failed to allege any specific, particularized *facts* about how the testing was actually performed on Plaintiff's sheets. Paragraph 18 provides only a simplistic statement that Plaintiff's sheets had a thread count of "168 x 120, or a total thread count of 288," but does not identify even the most basic of facts underlying such conclusion. (ECF 18 ¶ 18). Without more, the FAC leaves Target and the Court guessing as to how the allegedly independent lab actually calculated the thread count and precludes Target from being able to defend against the charges of falsity (which are based *solely* on this purported, unattached, and undescribed testing).

The FAC's rote invocation of the phrase "the standard method of testing Warp End Count and Filling Pick Count of Woven Fabric, D3775 ± 03a" does not make the alleged testing compliant with the requirements of ASTM 3775. Again, the FAC does not allege any *facts*

---

[1] *See Nat'l Urb. League v. Ross*, 508 F. Supp. 3d 663, 678 (N.D. Cal. 2020) ("The court may take judicial notice of matters that . . . 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))); *Cover v. Windsor Surry Co.*, No. 14-cv-5262-WHO, 2016 WL 520991, at *2 (N.D. Cal. Feb. 10, 2016) (taking judicial notice of ASTM standards).

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

demonstrating that the testing was actually *performed* consistent with the ASTM 3775 method, which requires, among other things, specific conditioning of the fabrics prior to testing and testing in at least five different, randomly selected places. (*See* Duvall Decl. Ex. 3 (ASTM D3775-17) at Sec. 8 (Conditioning), 9.1 (Procedure, General)). Without such *facts*, the Court cannot assume that Plaintiff's testing actually conformed to ASTM 3775 requirements. *See Council of Carpenters*, 459 U.S. at 526. Courts have routinely dismissed claims based on "independent laboratory testing" that was not sufficiently alleged to have been conducted in accordance with the required testing methods. *See, e.g.*, *Forouzesh v. CVS Pharmacy*, No. 2:18-cv-4090, 2019 WL 652887, at *5 (C.D. Cal. Feb. 15, 2019) (dismissing claims that relied on a testing methodology other than what was required by federal regulation); *Dougherty v. Source Nats., Inc.*, 148 F. Supp. 3d 831, 836 (E.D. Mo. 2015) (dismissing false labeling complaint where the plaintiff failed to allege that the required testing methods were applied or that the product did not pass that test when properly conducted).

That the FAC's testing allegations are inconsistent about what method was used, vague about who performed the testing, and lack *facts* about how any methodology was actually applied is particularly surprising considering that, following the filing of the original Complaint, Target requested that Plaintiff either provide Target with the alleged test results or attach them to the FAC. (Duvall Decl. ¶¶ 2-4). Target's request was denied, and the test report is still conspicuously absent from the FAC. Target is particularly confounded about how Plaintiff's testing could have arrived at a thread count of 288 considering that regular, ordinary-course testing of the Product using the ASTM 3775 methodology has repeatedly confirmed an 800 (or greater) thread count.

***"Impossibility" Based "on Information and Belief."*** Plaintiff's only other allegation to support his claim that the Product does not have an 800 thread count is Paragraph 24, which states that "[o]n information and belief . . . it is physically impossible for cotton threads to be fine enough to allow for 600 or more threads in a single square inch of 100% cotton fabric." (ECF 18 ¶ 24). Notably, this allegation is wholly devoid of factual support. And even if it were true, no reasonable consumer—including Plaintiff himself—could possibly be deceived by the representation.

Plaintiff's "belief," without any supporting facts or authority, that 600 cotton threads

cannot fit within a square inch, is insufficient to state a claim. Under Rule 8(a)'s pleading standard, a plaintiff may plead facts on information and belief only "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Sims v. Opportunity Fin.*, No. 4:20-cv-4730-PJH, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021) ("disregard[ing]" an "information and belief allegation" because it was "conclusory in nature" and not supported with other facts or reason). Under Rule 9(b), allegations based on information and belief generally are insufficient. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (affirming dismissal for failing to plead with sufficient particularity under Rule 9(b) where allegations of "suspicious circumstances" lacked actual details providing the factual basis for that belief).

Plaintiff's allegation regarding the physical properties of cotton threads cannot be pleaded "on information and belief" under Rule 8(a), much less Rule 9(b). Target obviously does not have exclusive possession or knowledge of such properties. And Plaintiff does not provide any factual information to support his "belief" in this regard. Plaintiff's allegation that it is *impossible* for a cotton product to have a thread count of 600 or more should be "disregarded" and "stripped" from Plaintiff's claims. *Kearns*, 567 F.3d at 1124.

Moreover, even if the Court were to credit Plaintiff's allegation as true, his claims would fail for a different reason. In *Moore v. Trader Joe's Co.*, the plaintiffs alleged that a reasonable consumer would interpret a product labeled as "100% Manuka Honey" to mean that the product was honey that was 100% derived from *one* floral source. 4 F.4th 874, 881 (9th Cir. 2021). In affirming the dismissal of the plaintiffs' claims, the Ninth Circuit concluded that such a strained interpretation was unreasonable because it is *physically impossible* for that to be the case—and that a reasonable consumer would take that impossibility into account in interpreting the product label. *Id.* at 883 (noting that "a reasonable honey consumer would . . . know that it is impossible to produce honey that is derived exclusively from a single floral source" because "consumers would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant"). Dismissal was appropriate because no reasonable consumer could be misled *in the manner claimed by the plaintiffs*. *Id.* (recognizing that a reasonable consumer

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

would not be misled because they would be aware of "the impossibility of making a honey that is 100% derived from one floral source"). Stated simply, "[a] reasonable consumer would not understand Trader Joe's label here as promising something that is impossible to find." *Id.* at 883-84.

Taking Plaintiff's allegation at face value, the same result follows here. According to Plaintiff, it is *physically impossible* to make 100% cotton sheets with a thread count of 600 or more. In other words, a 100% cotton sheet set advertised as having a thread count of 800 is a "phantom" product; it does not exist because, according to Plaintiff, it cannot exist. It follows that under Plaintiff's allegations, a reasonable consumer could not be deceived by thread count labeling of 100% cotton sheets of 600 or more because that reasonable consumer would know that such a product cannot exist, if the threads are counted according to Plaintiff's methodology. Under *Moore*, a reasonable consumer could not be misled *in the manner claimed by Plaintiff*, as a reasonable consumer would not understand Target's label "as promising something that [according to Plaintiff] is impossible to find." 4 F.4th at 883-84. Plaintiff's claims fail as a matter of law for this reason too.

**2. <u>Plaintiff Cannot Challenge Products That He Did Not Purchase.</u>**

It is axiomatic that a class action complaint must allege "with enough specificity *which* products are being challenged." *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1300 (N.D. Cal. 2023) (emphasis in original). As a result, claims based on unspecified, unpurchased products are appropriately dismissed "[e]ven if the labels on all the various . . . Products are the same or substantially similar," as it is "improper to 'assume that each of these subtly different Products is like all the others.'" *Id.* (quoting *Wilson v. Frito Lay N. Am.*, 961 F. Supp. 2d 1134, 1142 (N.D. Cal. 2013)); *see also McKinney v. Corsair Gaming, Inc.*, No. 3:22-cv-312-CRB, 2022 WL 2820097, at *13 (N.D. Cal. July 19, 2022) (dismissing claims based on unpurchased products because the plaintiffs only "vaguely allege[d] that the misrepresentations on different . . . products [we]re similar"). Moreover, "where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance." *Ang v. Bimbo Bakeries USA, Inc.*, No.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

4:13-cv-1196-WHO, 2014 WL 1024182, at *8-9 (N.D. Cal. Mar. 13, 2014) (dismissing claims based on unpurchased products where "fact-specific analyses of each product will be required; namely determination of each product's ingredients and formulation").

Here, Plaintiff alleges that he purchased only "a '100% cotton' queen sheet set of 'Threshold Signature' sheets with a thread count of 800, which were distributed by TARGET Corporation." (ECF 18 ¶ 15). But the FAC purports to challenge "all of the 100% cotton sheet sets advertised or otherwise marketed by TARGET that claim a thread count of 600 or higher." (ECF 18 ¶ 24; *see also id.* ¶ 43). According to the non-exhaustive examples identified in the FAC, this would apparently include sheets with thread counts as high as 1,200, and sheets manufactured by several different companies. (ECF 18 ¶¶ 19-23). The FAC not only fails to allege with any degree of specificity which products are actually being challenged, but it also fails to account for the more-than subtle differences between the various bedding products.

The FAC does not, for example, account for the differences between single-ply sheets (like the sheets Plaintiff allegedly purchased) and multi-ply sheet sets. Nor does it account for the fact that different manufacturers could apply different weaving methods or different thread-counting protocols. Thus, even if Plaintiff were able to establish that the 800 thread count label on the Threshold Signature sheets that he purchased was misleading, that would not necessarily establish that all other sheets with a stated thread count of 600 or more sold by Target were also misleading. *See, e.g.*, *Lopez v. Zarbee's, Inc.*, No. 3:22-cv-4465-CRB, 2023 WL 210878, at *7 (N.D. Cal. Jan. 17, 2023) (dismissing claims based on unpurchased products because "[i]t is not a reasonable inference that the . . . products at issue all come from the same, systematic manufacturing practice" producing identical quantities) (cleaned up). Accordingly, Plaintiff cannot pursue claims relating to products that he did not purchase. *Effinger*, 657 F. Supp. 3d at 1300 (despite the challenged product being "sold in multiple sizes with similar labeling," holding that the plaintiffs' "claims may proceed only on the basis that the label on the 32-ounce size of the Product is at issue"); *see also McKinney*, 2022 WL 2820097, at *13 (striking class claims "to the extent they refer to products that the Plaintiffs did not buy" because the complaint provided no factual allegations indicating that plaintiffs "could, by establishing that any of the labels were misleading,

necessarily establish that they all were") (cleaned up).

**3. The Court Lacks Equitable Jurisdiction over Plaintiff's UCL Claim and the Equitable Portions of Plaintiff's CLRA Claim.**

In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." 971 F.3d 834, 844 (9th Cir. 2020). Thus, a district court may dismiss claims for equitable relief under Rule 12(b)(6) where a plaintiff fails to adequately plead the inadequacy of legal remedies. *See, e.g., Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 906, 909 (N.D. Cal. 2021).

Here, Plaintiff claims only "economic injury" because "Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent," and seeks monetary damages "for the purchase price of the Products that were [allegedly] falsely labeled and advertised." (ECF 18 ¶¶ 34-35). This is "exactly the type of [alleged] injury for which legal remedies are appropriate." *Sharma*, 524 F. Supp. 3d at 908 (dismissing CLRA and UCL claims where the plaintiffs' "alleged injury is that '[a]s a result of their reliance on partial representations and/or omissions by Defendants, Plaintiffs and other Class members have suffered a *loss of money* and/or *loss in value* of their Class Vehicles'") (emphasis in original); *see also Sidhu v. Bayer Healthcare Pharms.*, No. 5:22-cv-1603-BLF, 2023 WL 6541865, at *9-10 (N.D. Cal. Oct. 5, 2023) (dismissing claims for equitable relief under the CLRA and UCL where the "Plaintiff's alleged injury is overpayment for a product she would not have bought but for Defendant's alleged misrepresentations and omissions"). Where, as here, a plaintiff seeks money damages under the CLRA to recover the amount paid for a challenged product that allegedly was falsely labeled and advertised, there is an adequate remedy at law, and the Court lacks equitable jurisdiction over equitable claims under the CLRA and UCL. *See Sonner*, 971 F.3d at 845 (affirming dismissal of equitable claims); *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1312 (9th Cir. 2022) ("[H]aving concluded that the plaintiff had an adequate legal remedy in the CLRA, we affirmed the dismissal of the plaintiff's equitable UCL and CLRA claims.").

While Plaintiff makes various allegations in the FAC that he lacks an adequate remedy at law, none of them suffices under *Sonner* and its progeny. (ECF 18 ¶¶ 39–42). First, Plaintiff

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

claims that some class members are barred from recovery at law by the statute of limitations. But the Ninth Circuit rejected that very argument in *Guzman*, holding that the plaintiff "had an adequate remedy at law through his CLRA claim for damages, even though he could no longer pursue it, and . . . the district court was therefore required to dismiss his equitable UCL claim." 49 F.4th at 1312 ("[The plaintiff's] failure to have timely pursued his CLRA claim cannot confer equitable jurisdiction on a federal court to entertain his UCL claim."). To hold otherwise obviously would undercut the purposes served by statutes of limitation.

Second, Plaintiff claims that his UCL claim covers a broader range of alleged misconduct than that encompassed by his legal CLRA claim because "[i]t includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products." (ECF 18 ¶ 40). But Plaintiff does not, and plausibly could not, explain how that is any different than his CLRA allegation that "Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling, that the Products have a certain thread count." (ECF 18 ¶ 74). That is, Plaintiff fails to allege any violation that could only be remedied equitably under the UCL but that could not be remedied by damages under the CLRA.

Next, Plaintiff alleges that damages are inadequate to prevent future harm—but he fails to adequately plead a threat of future harm. (ECF 18 ¶ 41). To plead a threat of future harm, "[p]laintiffs must plausibly allege either that they 'will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to' or that they 'might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved.'" *Sharma*, 524 F. Supp. 3d at 909 (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018)) (dismissing CLRA and UCL claims for lack of equitable jurisdiction). Plaintiff makes no such allegation here, nor could he, particularly in light of his "belief" that 600+ thread count, 100% cotton sheets are *impossible* to manufacture.

Finally, Plaintiff (obviously aware of this pleading deficiency) makes it a point to assert in

his FAC that it would be premature for the Court to decide at the pleadings stage whether it has equitable jurisdiction. But the question of whether Plaintiff has adequate legal remedies available is a question of law, and Plaintiff has not and cannot allege any facts that he might discover that would suddenly show that he lacks a legal remedy. *See Nacarino v. KSF Acquisition Corp.*, No. 3:22-cv-4021-MMC, 2022 WL 17178688, at *5 (N.D. Cal. Nov. 23, 2022) (granting a motion to dismiss claims for equitable relief, emphasizing that "[t]he question is not . . . whether or when [a plaintiff is] required to choose between two available inconsistent remedies, but, rather, whether equitable remedies are available to [the plaintiff] at all"). The Ninth Circuit and this Court have regularly dismissed claims for equitable relief under the UCL and CLRA where the plaintiff has an adequate legal remedy and seeks money damages for the amount paid for the challenged product. *See, e.g.*, *Guzman*, 49 F.4th at 1314-15; *Sharma*, 524 F. Supp. 3d at 909; *Sidhu*, 2023 WL 6541865, at *9; *In re MacBook Keyboard Litig.*, No. 5:18-cv-2813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020). Plaintiff's claims for equitable relief under the CLRA and UCL likewise should be dismissed.

**4. <u>Plaintiff's Request for Punitive Damages Is Improper.</u>**

Plaintiff also purports to request punitive damages as part of his CLRA claim. (ECF 18 ¶ 78). But to properly plead a request for punitive damages under the CLRA, a plaintiff must allege "oppression, fraud, or malice" *and* that such conduct was performed or ratified by an "officer, director, or managing agent" of the defendant. *Rice-Sherman v. Big Heart Pet Brands*, No. 3:19-cv-3613-WHO, 2020 WL 1245130, at *14 (N.D. Cal. Mar. 16, 2020) (dismissing a request for punitive damages because the plaintiff failed to allege that "an officer, director, or managing agent of the corporation . . . consciously disregarded, authorized, or ratified each act of oppression, fraud, or malice"). The FAC is not even clear as to what allegation conceivably could satisfy these requirements, and Paragraph 27—which is presumably Plaintiff's best effort—not only fails to identify any officer, director, or managing agent of Target but also is the type of speculative "on information and belief" allegation that cannot survive a motion to dismiss. *See* Sec. III.B.1, *supra*. Accordingly, Plaintiff's request for punitive damages must be dismissed.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**C. Plaintiff's Class Allegations Should Be Stricken Because They Fail to Exclude Putative Class Members Subject to an Arbitration Agreement and Class Action Waiver and Who Agreed to Litigate in Minnesota.**

District courts both within and outside the Ninth Circuit have stricken, at the pleading stage, immaterial class allegations in order to conserve judicial and party resources. *See, e.g.*, *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010) (striking class allegations at the pleadings stage because the putative class as alleged in the second amended complaint was not ascertainable); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (concluding that a motion to strike class allegations was not premature because the issues "are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim"); *In re: Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 953 F. Supp. 2d 713, 725 (N.D. Tex. 2013) (striking class allegations at the pleadings stage).

This case similarly presents circumstances that justify striking Plaintiff's class allegations at the pleading stage. Plaintiff seeks to represent a class defined to include:

> All individuals in California who purchased TARGET's sheet sets that were advertised and marketed as being comprised of 100% cotton with a thread count of 600 or higher, for personal use from four years prior to the filing of the complaint until the date class notice is disseminated. (collectively referred to as the "Class").

(ECF 18 ¶ 43). But Plaintiff is situated differently—both factually and legally—than many of the unnamed purchasers he seeks to represent. While Plaintiff allegedly purchased only a single item from his local Target store using cash, his putative class includes *online* purchasers from Target.com who, in making their purchases, agreed to Target.com's Terms & Conditions ("Terms") that contain an arbitration clause, a class action waiver, and a forum-selection clause for non-arbitrable claims. (*See* Decl. of Carolina Padilla in Support of Def's Mot. to Dismiss ("Padilla Decl."), ¶¶ 1-5; Greywitt Decl. ¶¶ 7-10, Exs. 1-2). Plaintiff's putative class includes such purchasers despite Target having requested, in a meet-and-confer, that Plaintiff exclude them from his FAC due to the application of the Terms. (Duvall Decl. ¶¶ 2-4).

In very similar circumstances, courts have rejected class allegations at the pleadings stage for failure to clearly exclude putative class members who are subject to individual arbitration

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

agreements. *See, e.g., In re: Online Travel Co.*, 953 F. Supp. 2d at 725. This is because class action waivers are enforceable and the Supreme Court has expressed a "federal policy favoring arbitration." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015) (cleaned up); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms"); *Morvant v. P.F. Chang's China Bistro*, 870 F. Supp. 2d 831, 842 (N.D. Cal. 2012) ("[T]he FAA requires not just compelling arbitration, but compelling arbitration *on an individual basis* in the absence of a clear agreement to proceed on a class basis.") (emphasis in original). For example, in *In re: Online Travel Company*, the defendant moved at the pleadings stage to strike class allegations because putative class members were bound by the company's user agreement, which, like Target's Terms, contained a binding individual arbitration clause. 953 F. Supp. 2d at 725. The court, citing case law of this Court, reasoned that "[a]ny claims by absent class members bound by the User Agreement would be impertinent, as those class members would be bound to individually arbitrate their claims," and ruled that "[t]he class the Court considers at the certification stage will not include those claims subject to arbitration." *Id.* (citing *Kay v. Wells Fargo & Co. N.A.*, No. 3:07-cv-1351, 2007 WL 2141292, at *2 (N.D. Cal. July 24, 2007) as supporting the striking of claims of absent class members prior to class certification). In its order, the *Online Travel Company* court struck "allegations of putative class members subject to the User Agreement." *Id.*

The result should be the same here because throughout the putative class period, Target's Terms have provided that disputes related to online purchases must be arbitrated individually. Those Terms have consistently stated:

> **Arbitration Agreement**
>
> **Please read this section carefully. Except as the Terms & Conditions otherwise provided, you waive your rights to try any claim in court before a judge or jury and to bring or participate in any class, collective, or other representative action.**
>
> - **Agreement to Binding Arbitration**
>
> You and Target agree that in the event of any claim, dispute, or controversy (whether in contract, tort, statute, or otherwise) arising out of, relating to, or connected in any way with (1) the site or (2) the breach, enforcement, interpretation, application, or validity of these Terms & Conditions, such claim, dispute or controversy will be resolved exclusively by final and binding arbitration, except as otherwise set forth in these Terms & Conditions (the "Arbitration Agreement").

DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
(213) 623-9300

> . . . .
>
> - **<u>Jury Trial & Class Action Waiver</u>**
>
> Except as the Terms & Conditions otherwise provide, you and Target acknowledge and agree that you are each waiving the right to a trial by jury. The parties further agree that any arbitration shall be conducted in their individual capacities and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis. You and Target may not be plaintiffs or class members in any purported class, collective, or representative proceeding, and may each bring claims against the other only in your or its individual capacity. The arbitrator may award declaratory or injunctive relief only on an individual basis and only to the extent necessary to provide relief warranted by the individual claim.

(Greywitt Decl. ¶¶ 7-9, Exs. 1-2).[2]

Importantly, to make a purchase on Target's website or mobile application, a customer must have a Target account. (Padilla Decl. ¶ 4). And in order to create such an account, each user is presented with a hyperlink to, and specifically asked to accept, the Terms, in clear, understandable text located directly above the button that a customer must click to "Create account":




---

[2] At all times since April 2020, Target's Terms have included a substantially similar arbitration provision and class action waiver. (*Id.*).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

(*Id.*). Clicking on the "Terms & Conditions" hyperlink takes the customer to the Target.com webpage containing the then-current Terms. (*Id.*).

Moreover, at all times since April 2020, the checkout screen that a customer has been required to navigate on the Target.com website or mobile application to complete an online purchase has contained a disclosure directly above the "payment" button (*e.g.*, for someone using PayPal, the "PayPal" or "Pay Later" buttons shown in the image below)that has contained another hyperlink to Target's then-current Terms & Conditions and advised the customer that by placing an order, they agree to Target's Terms & Conditions. (*Id.* ¶ 5). At all times since April 2020, this disclosure has looked substantially similar to the following screenshot recently captured from the Website:




(*Id.*). All Target.com online customers have been similarly presented with and asked to agree to the Terms before making any online purchases over the last four years. (*Id.* ¶¶ 4-5).

These Target Terms are akin to a "clickwrap" agreement, and "[c]ourts routinely find clickwrap agreements enforceable." *Oberstein v. Live Nation Ent.*, 60 F.4th 505, 513 (9th Cir. 2023) (affirming enforcement of similar agreement where "[t]he text linking to the TOU is placed

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

conspicuously close to the buttons that the users are required to press to sign up, sign in, or complete a purchase"); *Lee v. Ticketmaster LLC*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (holding that "Ticketmaster's website provided sufficient notice for constructive assent, and therefore, there was a binding arbitration agreement between [plaintiff] and Ticketmaster"). Indeed, Target's Terms have been enforced by the Central District of California to compel arbitration on an individual, non-class basis. *Maybaum v. Target Corp.*, No. 2:22-cv-687-MCS-JEM, 2022 WL 1321246, at *6 (C.D. Cal. May 3, 2022). The Ninth Circuit also reversed a denial of arbitration after finding a similar hyperlink reasonably conspicuous due to italicized text and location below a sign-in button. *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020); *see also Regan v. Pinger, Inc.*, No. 5:20-cv-2221-LHK, 2021 WL 706465, at *6–7 (N.D. Cal. Feb. 23, 2021) (enforcing arbitration agreement disclosed by hyperlink near "Login" button, and collecting "decisions of numerous courts in this circuit" reaching same result).

Plaintiff's putative class as currently defined is therefore impermissibly overbroad to the extent it includes purchasers who cannot pursue their claims in litigation, let alone class action litigation, because they purchased sheet sets on Target.com and thus are subject to binding individual arbitration. Moreover, because Plaintiff allegedly did not purchase online and agree to arbitration, he is not, and could not be, a suitable class representative for the individuals in the putative class who *did* agree to arbitration: "district courts in this Circuit routinely hold that a plaintiff who did not sign an arbitration agreement or class-action waiver lacks the requisite typicality and adequacy to represent class members who did." *Bultemeyer v. CenturyLink Inc.*, No. 2:14-cv-2530, 2022 WL 1046292, at *6 (D. Ariz. Apr. 7, 2022) (citing *Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 5:20-cv-1699, 2021 WL 6102514, at *2–3 (C.D. Cal. Oct. 28, 2021)); *see also Cornejo v. Big Lots Stores*, No. 2:22-cv-1247, 2023 WL 3737058, at *3 (E.D. Cal. May 31, 2023) ("[T]he class definition will need to be narrowed to exclude putative class members who signed arbitration agreements."). Indeed, the Ninth Circuit *decertified* a class where some, but not all, members of the class were potentially subject to arbitration agreements. *O'Connor v. Uber Techs.*, 904 F.3d 1087, 1094 (9th Cir. 2018) (vacating certification order where the class "as certified includes drivers who entered into agreements to arbitrate their claims and to waive their

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

right to participate in a class action"); *see also Conde v. Open Door Mktg.*, 223 F. Supp. 3d 949, 963 (N.D. Cal. 2017) (denying class certification where some class members were "possibly bound by an arbitration agreement").

The inclusion of online purchasers in Plaintiff's putative class also renders such class overbroad because those purchasers also agreed that any non-arbitrable claims would be litigated in a Minnesota federal or state court. (*See* Greywitt Decl. ¶¶ 7-8, 10, Ex. 2); *Dugan v. Lloyds TSB Bank, PLC*, No. 3:12-cv-2549-WHA, 2013 WL 1703375, at *6 (N.D. Cal. Apr. 19, 2013) (certifying a UCL class that *excluded* individuals who agreed to a forum-selection clause for another jurisdiction); *Nat'l Convention Servs. v. Applied Underwriters Captive Risk Assurance Co.*, No. 1:15-cv-7063, 2019 WL 3409882, at *4 (S.D.N.Y. July 27, 2019) (denying class certification in part because class action waivers and forum selection clauses created individualized issues and "to the extent that the forum selection and class action waivers are applicable and enforceable, the Court would be required to dismiss class members from the case").

Accordingly, the Court should strike Plaintiff's class allegations to eliminate immaterial allegations and streamline issues for discovery and later stages of this case.

## IV. CONCLUSION

For the foregoing reasons, Target respectfully requests that the Court transfer the case to either the District of Minnesota or the Southern District of California, pursuant to 28 U.S.C. § 1404(a). Further, Target requests that the Court grant its motion to dismiss pursuant to Rules 12(b)(6) and 9(b), dismiss Plaintiff's First Amended Class Action Complaint in its entirety, with prejudice, and without leave to amend, and strike Plaintiff's class allegations under Rule 12(f) to the extent they purport to include online purchasers from Target's website or mobile app.

Dated: June 24, 2024

DENTONS US LLP

By: */s/ Michael J. Duvall*
Michael J. Duvall

Attorneys for Defendant
TARGET CORPORATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300